IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WAYNE JOSEPH SWEENEY (BOP Register No. 21770-078), | § § § § | |
| Movant, | § § | |
| V. | § § | No. 3:15-cv-3342-G-BN |
| UNITED STATES OF AMERICA, | § § § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Movant Wayne Joseph Sweeney, a federal prisoner, proceeding *pro se*, has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence, asserting that his guilty plea was involuntary and that his trial counsel was constitutionally ineffective. *See* Dkt. Nos. 2 & 3. Upon the retirement of then-Chief Judge Jorge A. Solis, this action was reassigned to Senior United States District Judge A. Joe Fish. *See* Dkt. No. 12. Under 28 U.S.C. § 636(b) and an order of reference, Judge Fish has referred it to the undersigned United States magistrate judge for hearing, if necessary, and recommendation. *See* Dkt. No. 13. The government has filed a response in opposition to Sweeney's Section 2255 motion, *see* Dkt. No. 9, and Sweeney has filed a reply brief and moved for summary judgment, *see* Dkt. Nos. 10 & 11.

The undersigned now issues the following findings of fact, conclusions of law, and recommendation that the Court should deny Sweeney's Section 2255 motion, deny

-1-

his motion for summary judgment, and deny, as moot, the government's motion requesting an extension of time to file its response.

**Applicable Background**

Pursuant to a plea agreement that included a provision under Federal Rule of Criminal Procedure 11(c)(1)(C), under which the parties agreed that a sentence not exceeding 120 months of imprisonment is appropriate, *see United States v. Sweeney*, No. 3:13-cr-446-G (01) (N.D. Tex.), Dkt. No. 24, Sweeney pleaded guilty to conspiracy to distribute a controlled substance analogue, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C), on February 18, 2014, *see id.*, Dkt. Nos. 27, 28, 29, 31, & 78, and, on December 10, 2014, the Court sentenced him to 108 months of imprisonment, *see id.*, Dkt. Nos. 50, 51, 52, & 70. Sweeney appealed, *see id.*, Dkt. No. 54, but voluntarily dismissed his appeal on June 3, 2015, *see id.*, Dkt. No. 87.

Through his timely-filed Section 2255 motion, *see* 28 U.S.C. § 2255(f)(1), Sweeney challenges the voluntariness of his guilty plea and also asserts that his trial counsel were ineffective under the Sixth Amendment (the "IATC claim") because (1) counsel failed to adequately investigate whether PB-22 and 5F-PB-22 were controlled substance analogues; (2) counsel failed to challenge the Controlled Substances Act (the "CSA"); (3) counsel failed to advance Sweeney's claim that he did not know he was selling a controlled substance; and (4) counsel failed to pursue specific performance of the plea agreement's provision under Federal Rule of Criminal Procedure 35.

**Legal Standards and Analysis**

As applicable to Sweeney's conviction, the CSA "'makes it unlawful knowingly

to manufacture, distribute, or possess with intent to distribute controlled substances,'" and "[t]he Analogue Act 'identifies a category of substances substantially similar to those listed on the federal controlled substance schedules and then instructs courts to treat those analogues, if intended for human consumption, as controlled substances listed on schedule I for purposes of federal law.'" *United States v. Bays*, ___ F. App'x ___, No. 15-10385, 2017 WL 763817, at *2 (5th Cir. Feb. 24, 2017) (per curiam) (quoting *McFadden v. United States*, ___U.S. ___, 135 S. Ct. 2298, 2302 (2015) (citing 21 U.S.C. §§ 841(a)(1), 802(32)(A), 813); ellipses omitted).

In *McFadden*, decided June 18, 2015, the United States Supreme Court resolved a circuit split and, in doing so, reversed then-controlling Fifth Circuit precedent as to the scienter requirement under the CSA and the Analogue Act. *See United States v. Desurra*, 865 F.2d 651, 653 (5th Cir. 1989) ("If a defendant possesses an analogue, with intent to distribute or import, the defendant need not know that the drug he possesses is an analogue."). In contrast to the controlling law at the time Sweeney pleaded guilty (some 16 months before *McFadden* was decided) and was sentenced (some six months before), *see id.*, pursuant to which, the government concedes, Sweeney's plea agreement's "factual resume did not expressly include the scienter requirement as an element of the offense nor was he advised of that element during his rearraignment," Dkt. No. 9 at 11-12, the Supreme Court, in *McFadden*,

> held that the Government must prove "a defendant knew that the substance with which he was dealing was 'a controlled substance,' even in prosecutions involving an analogue." *McFadden*, 135 S. Ct. at 2305. This "knowledge requirement can be established in two ways." *Id.* First,

-3-

> it can be established by proving the defendant "knew that the substance with which he was dealing is some controlled substance – that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act – regardless of whether he knew the particular identity of the substance." *Id.* Second, it can be established by proving the defendant "knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue." *Id.* In other words, if the defendant "knew that the substance was substantially similar to a controlled substance in its chemical structure and produced a substantially similar 'high,' he had the requisite knowledge that the substance was a controlled substance analogue." *United States v. Stanford*, 823 F.3d 814, 835 (5th Cir. 2016); *see also* 21 U.S.C. § 802(32)(A).

*Bays*, 2017 WL 763817, at *3 (brackets omitted).

Through this collateral proceeding, Sweeney seeks to use *McFadden* to challenge the conduct of his counsel and the alleged failure of the Court to inform him of all elements of the offense to which he was pleading guilty. *See, e.g.,* Dkt. No. 3 at 21-30 (asserting that "his right to effective assistance of counsel was violated by his counsel's incompetent advice to plead guilty despite the fact that [Sweeney] steadfastly told his lawyers that he did not know that the substances he was selling at his public business were controlled substances analogue or for that matter regulated by any laws"; that "counsel advised [Sweeney] that it did not matter whether he knew the 'stuff' was illegal, he was still in violation of federal law"; that "the constitutionally deficient performance and advice of [his] lawyers has resulted in [Sweeney] pleading guilty to offenses which [he] did not have the statutory mens rea required for an intelligent and voluntary guilty plea to be entered and accepted for the offenses"; that Sweeney, "along with his counsel[], Larry Finstrom and Carl Day[,] appeared before the Court pursuant to a written plea agreement and entered a guilty plea to conspiracy to possess with

intent to distribute a controlled substance analogue"; and that, "[d]uring the Court's inquiry of [Sweeney] regarding the charged offense … , the Court failed to advise [Sweeney] that for the government to prove a conspiracy to possess with intent to distribute an analogue controlled substance, the government would have to prove beyond a reasonable doubt, that [Sweeney] 'knew' that the 'analogue' substance he was accused of conspiring to distribute was prohibited under the [CSA and the Analogue Act]").

Procedural default – guilty-plea claims

When a Section 2255 motion "raises an issue [the movant] did not preserve at the plea hearing or on direct appeal, considerations of finality are particularly pressing." *United States v. Cooper*, 548 F. App'x 114, 115 (5th Cir. 2013) (per curiam) ("As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998); some internal quotation marks omitted)). "Consequently, [w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, … or that he is actually innocent." *Id.* at 115-16 (quoting *Bousley*, 523 U.S. at 622; citations and internal quotation marks omitted).

Through the voluntary dismissal of his direct appeal, Sweeney failed to raise guilty-plea-related claims on direct appeal, and those claims are "barred absent a showing of the procedural default requirements of cause and prejudice or actual innocence." *Maggio v. United States*, Nos. 8:09-cv-892-T-27TGW & 8:00-cr-427-T-

27TGW, 2010 WL 2927685, at *3 (M.D. Fla. July 21, 2010) (citations omitted); *see, e.g.*, *Yalincak v. United States*, Nos. 3:08cv1453 (JBA) & 3:08cv1454 (JBA), 2011 WL 4502817, at *1 (D. Conn. Sept. 28, 2011) (the notice of appeal "was voluntarily dismissed, and thus, petitioner's claims of the Government's breach of the plea agreement at sentencing and that his plea was not voluntary or intelligent were never raised on direct review and are both procedurally defaulted, unless he can demonstrate either (1) cause for failing to raise the issue and prejudice resulting therefrom or (2) actual innocence" (citation omitted)); *accord United States v. Lopez*, 499 F. App'x 824, 826 (10th Cir. 2012); *Reed v. United States*, Nos. 10-21229-Civ & 07-20634-Cr, 2010 WL 4982817, at *2 (S.D. Fla. Nov. 10, 2010).

Beginning with the cause-and-prejudice exception to procedural default, Sweeney fails to show cause, as his own conduct prevented his guilty-plea claims from being raised on appeal. While Sweeney has not explained why he voluntarily dismissed his direct appeal, through which he could have challenged the voluntariness of his guilty plea, his "appeal and subsequent voluntary dismissal show that [Sweeney] exercised the power to raise this claim on direct review and that no external influence impeded his ability to do so." *Alvarez-Herrera v. United States*, Nos. CV 16-05384-BRO & CR 14-00229-BRO, 2017 WL 1097173, at *4 (C.D. Cal. Mar. 23, 2017) (citing *Maples v. Thomas*, 565 U.S. 266 (2012)); *see also United States v. Jackson*, Nos. 3:06cr445/LAC & 3:07cv295/LAC/MD, 2008 WL 89871, at *2 (N.D. Fla. Jan. 7, 2008) ("To show cause for procedural default, a defendant must show that 'some objective factor external to

the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct.'" (quoting *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam))).

Turning to the actual-innocence exception, that exception is established only when a movant demonstrates that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. And, "[b]ecause '"actual innocence" means factual innocence, not mere legal insufficiency,' the government may rely on admissible evidence of [a movant's] guilt even if that evidence was not presented during the plea colloquy." *De La Rosa v. United States*, 476 F. App'x 810, 812 (11th Cir. 2012) (per curiam) (quoting *Bousley*, 523 U.S. at 623-24); *see also United States v. Jones*, 172 F.3d 381, 384-85 (5th Cir. 1999) (per curiam) (noting that "in accordance with the dictates of *Bousley*," the parties "may present all relevant evidence on the issue of [the Section 2255 movant's] actual innocence," including "facts that were not presented at the plea colloquy; specifically, testimony presented at the ... preliminary hearing and sentencing hearing, and facts contained in [the] presentence report" [the "PSR"]); *cf. United States v. Ketchen*, 1:13-cr-00133-JAW-02, 2016 WL 3676150, at *21 (D. Me. July 6, 2016) (considering, in the context of a motion to withdraw a guilty plea, circumstantial evidence, such as facts set out in the defendant's PSR, in examining an assertion of actual innocence based on *McFadden*).

Sweeney attempts to access the actual-innocence gateway to procedural default

by arguing that he did not know that any substance that he was selling was a controlled substance analogues. But ample evidence in the record prevents finding that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623.

This evidence includes Sweeney's admission under oath at his rearraignment that he knowingly participated in an "unlawful" conspiracy "to distribute substances containing detectable amounts of synthetic cannabinoids, including substances containing controlled substance analogue PB-22 and 5F-PB-22, all of which are Schedule I controlled substances." No. 3:13-cr-446-G (01), Dkt. No. 78 at 10. In addition, testimony elicited at Sweeney's detention hearing, *see generally id.*, Dkt. No. 22, provides circumstantial evidence that Sweeney knew that the product "Knock Out," a synthetic marijuana Sweeney sold, was an analogue that was an illegal controlled substance, for example: (1) Knock Out was billed as "medical marijuana," although all use of marijuana was not legalized in Texas; (2) Knock Out was kept out of public view and predominantly sold through cash transactions; and (3) Sweeney had to switch product suppliers more than once because federal authorities searched and shut down the suppliers' manufacturing operations.

Sweeney is unable to prove either exception to procedural default, and the Court should conclude that it is barred from considering the collateral challenges to his guilty plea.

<u>IATC claims</u>

The Court reviews IATC claims under the two-prong test established in

*Strickland v. Washington*, 466 U.S. 668 (1984), under which a movant must demonstrate that the performance of his attorney fell below an objective standard of reasonableness, *see id.* at 687-88. To be cognizable under *Strickland*, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The movant also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

To demonstrate prejudice, a movant "must show that there is a reasonable

-9-

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

As Sweeney pleaded guilty, to establish prejudice, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This assessment

> will depend in part on a prediction of what the outcome of a trial might have been. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. That assessment, in turn, will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial.

*United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014) (quoting *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (in turn citing *Hill*, 474 U.S. at 56-58)); *see also del*

-10-

*Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007) (a movant "need not prove by a preponderance that the result of the proceedings in the trial court would have been different, but he must sufficiently undermine confidence in the outcome to illustrate that counsel's deficient performance caused the outcome of the proceeding to be unreliable or the proceeding to be fundamentally unfair" (citing *Armstead*, 37 F.3d at 207)).

Sweeney's theories as to his trial counsel's alleged constitutional ineffectiveness turn on the holding of *McFadden*, a decision handed down more than a year after Sweeney pleaded guilty and months after he was sentenced. But, in conducting the *Stickland* analysis, the Court "must make 'every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689; ellipses omitted).

And, as the United States Court of Appeals for the Fifth Circuit explained in *Fields* – in which the movant argued that his counsel was ineffective for failing to anticipate that the Supreme Court would issue a decision that would "creat[e] a new and previously un-rejected basis for applying *Apprendi[ v. New Jersey*, 530 U.S. 466 (2000)] to the [federal sentencing [g]uidelines," *id.* at 293 (original bracket omitted) –

> the objective standard of reasonableness to which counsel are held requires that they research relevant facts and law, or make an informed decision that certain avenues will not be fruitful. Thus, solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention. Although a failure of counsel to be

> aware of prior controlling precedents in even a single prejudicial instance might render counsel's assistance ineffective under the Sixth Amendment, we have repeatedly held that there is no general duty on the part of defense counsel to anticipate changes in the law. Likewise, we have held that counsel is not ineffective for failing to raise a claim that courts in the controlling jurisdiction have repeatedly rejected, or even for not raising every nonfrivolous ground that might be pressed on appeal.

*Id.* at 294 (citations, quotation marks, and brackets omitted); *see id.* at 296 ("Counsel is required to research facts and law and raise meritorious arguments based on controlling precedent, but the law of this circuit is clear that counsel need not anticipate changes in the law or raise meritless objections. We have never adopted the position that counsel might render ineffective assistance by failing to raise an objection whose favorable resolution is foreclosed by existing law." (citations omitted)).

Like counsel in *Fields*, Sweeney's trial counsel rendered advice based on then-controlling Fifth Circuit precedent that provided, as applicable here, that "the defendant need not know that the drug he possesses is an analogue," *Desurra*, 865 F.2d at 653, and counsel are not constitutionally ineffective for failing to lodge objections anticipating that such precedent would be overturned by *McFadden*, *cf. United States v. McTizic*, 377 F. App'x 391, 393-94 (5th Cir. 2010) (per curiam) (holding that, even where a defendant provided sworn evidence describing "in detail how she was made aware of the potential impact of [a yet-to-be-decided Supreme Court decision] and communicated her request to her trial counsel that he file an objection based on the case," "[u]nder *Strickland*'s rigorous test," "the failure to raise what would have been a fruitless objection [does not amount] to ineffective assistance of counsel").

Therefore, Sweeney's IATC claims premised on counsel's alleged failure to

adequately investigate whether particular analogues were controlled substance analogues and on counsel's failure to argue that Sweeney did not know that the substances were controlled substances are foreclosed by *Fields*. Relatedly, *McFadden* did not overrule the CSA of the Analogue Act, so Sweeney's IATC claim based on counsel's failure to challenge those statutes is also baseless.

And, as to Sweeney's cursory claim that his counsel was ineffective for failing to secure a substantial-assistance motion under Rule 35, *see* Dkt. No. 3 at 18, "[u]nder Rule 35(b)'s terms, only the government may seek to reduce a sentence for substantial assistance, and thus there can be no ineffective assistance to the extent [Sweeney] contends [that counsel were] deficient in failing to make a Rule 35(b) motion," *Claxton v. United States*, Civ. No. 12-00433 JMS-KSC & Cr. No. 10-00108 JMS, 2013 WL 1136704, at *9 (D. Haw. Mar. 18, 2013) (collecting cases); *cf. United States v. Vargas-DeLeon*, 124 F. App'x 854, 858 (5 th Cir. 2005) (per curiam) ("We are not persuaded that Vargas-DeLeon's representation was adversely affected because of his counsel's assertion at sentencing that a reduction is "somewhat easier" to obtain under [U.S.S.G.] § 5K1.1 than Rule 35. *Both procedures require a motion by the Government.*" (emphasis in original)).

In sum, the Court should deny all of Sweeney's IATC claims.

**Recommendation**

The Court should deny Sweeney's Section 2255 motion and all pending motions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 11, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE